## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| SMART RF INC., | § | |
| *Plaintiff*, | §<br>§ | |
| v. | §<br>§ | Case No. 2:24-cv-00195-JRG-RSP |
| AT&T MOBILITY LLC, | §<br>§ | (Lead Case) |
| *Defendant*. | §<br>§<br>§ | |

### MEMORANDUM ORDER

Before the Court is Defendants' Motion to Exclude the Opinions and Testimony of Dr. Scott J. Savage. **Dkt. No. 99**. In the Motion, Defendants request that the Court strike the testimony of Dr. Savage, Plaintiff's survey expert, because it is said to contain late-disclosed survey evidence, and it is not tied to the underlying facts of the case. *Id.* Having considered the Motion, and for the reasons disused below, the Court finds that Defendants' Motion should be, and hereby is, **DENIED**.

### I.    BACKGROUND

Plaintiff Smart RF Inc accuses Defendants AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, and T-Mobile USA, Inc. (collectively, "Defendants") of infringing U.S. Patent Nos. 8,078,561, 8,767,857, 9,641,204 and 10,958,296 (collectively, the "asserted patents") through the Defendants' use of cellular networking equipment manufactured by Intervenor-Defendants Ericsson Inc. and Nokia of America Corporation. The asserted patents are generally directed at cellular networking technology.

### II.    LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine

1

a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under

2

Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## III.    ANALYSIS

### A.    Survey Evidence

In their Motion, Defendants argue that Plaintiff failed to timely inform them of "its intent to rely on a conjoint survey" prior to serving Dr. Savage's report. Dkt. No. 99 at 4. Defendants point to the 4-factor test in *CQ, Inc. v. TXU Min. Co., L.P.*, which they argue Plaintiff has failed to meet. 565 F.3d 268, 280 (5th Cir. 2009).[1] More specifically, Defendants argue that Plaintiff has offered no explanation for its "failure to timely disclose." Dkt. No. 99 at 5. Next, Defendants argue that this evidence is "not essential" to Plaintiff's case, because it only partially relates to its damages figure. *Id.* Defendants' main argument is that this disclosure – one week before the expert discovery deadline – is highly prejudicial to their case, because the rebuttal briefing period did not afford them enough time to conduct a full responsive survey. *Id.* Finally, Defendants argue that given the late stage of the case, a continuance is inappropriate. *Id.*

In its response, Plaintiff argues that because Dr. Savage's survey was timely disclosed, Defendants cannot demonstrate any prejudice. Dkt. No. 136 at 7. Plaintiff points to "Defendants'

---

[1] The four factors are: "(1) [the proffering party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the non-proffering party] in allowing the evidence, and (4) the availability of a continuance."

ever-evolving discovery responses relating to non-infringing alternatives" to explain the timing of its supplementation with Dr. Savage's survey. *Id.* Plaintiff points to caselaw holding that under *CQ* minimal prejudice exists for an untimely-served survey expert report. *Id.* Plaintiff argues that Defendants cannot demonstrate any "genuine prejudice" because the Court's schedule allowed Defendants 6 weeks to conduct a rebuttal survey. *Id.* at 9. Finally, Plaintiff argues that because Dr. Savage's report forms the basis for its damages report, exclusion of it would be "highly prejudicial." *Id.*

The Court finds that even though Dr. Savage's report was disclosed relatively late in the schedule, *CQ's* 4-factor test supports admission. First, the Court finds that the prejudice to Defendants is minimal. Defendants' primary prejudice argument is that they have no time to serve a rebuttal survey. Defendants, however, fails to identify why a full rebuttal survey is necessary, and why the interviews from their existing survey expert, Ms. Butler, which "successfully highlight the glaring issues with Savage's report," are insufficient to rebut Dr. Savage's survey report. *See* Dkt. No. 99 at 6. Next, the Court finds that because Dr. Savage's report is "tied" to the way that Plaintiff's expert, David Kennedy, values the patented technology, it is clearly important to Plaintiff's case. The Court finds that in light of changing discovery disclosures, any failure to disclose by Plaintiff is sufficiently justified. Finally, the Court agrees that given the advanced stage of the case, a continuance is impractical. Since all four factors favor admission, the Court finds that exclusion of Dr. Savage's report would be improper.

### B.    Survey Results

#### 1.    *Asserted Patents*

Defendants first argue that because Dr. Savage's report "does not accurately represent the accused functionality or key features of the Asserted Patents," it is "unreliable and excludable

under *Daubert*." Dkt. No. 99 at 7. Defendants point to several unpatented features that Dr. Savage's report purports to assign value to, and notes that despite Dr. Savage's lack of technical background, Plaintiff's technical expert, Dr. Madisetti, also "fails to provide the necessary link between the claimed invention and the 'download speed' input." *Id.* Defendants argue that because Dr. Savage's report is not limited to cellular networks, and improperly includes Wi-Fi networks, juror confusion is likely and exclusion is warranted. *Id.* at 8.

In its response, Plaintiff argues that Defendants misstate the caselaw, in requiring the survey expert's inputs be tied to the claims of the asserted patents. Dkt. No. 136 at 10. Plaintiff argues that Dr. Savage's report, which "isolates the economic value" of the patented improvements is permissible under existing caselaw, which permits surveys that "measure consumer value for [patented] performance metrics rather than claim language verbatim." *Id.* Plaintiff concludes that any remaining "disputes regarding whether a limitation is covered are for cross-examination." *Id.*

The Court is of the opinion that Dr. Savage's report is sufficiently tied to the patents-in-suit, and exclusion is not warranted. Dr. Savage's inclusion of Wi-Fi does not automatically render his report unreliable. The fact that an expert's survey may be imperfect or conducted in an alternative fashion does not automatically render the survey unreliable or its methodology so flawed as to require its exclusion under *Daubert*. *Droplets, Inc. v. Overstock.com, Inc.*, 2015 WL 11120841, at *3 (E.D. Tex. Jan. 7, 2015). Dr. Savage's report purports to assign consumer value to increased network speeds. While it may miss the Wi-Fi/cellular distinction underlying Plaintiff's technology, because Dr. Savage relies on expert testimony that finds increased network speed a benefit of Plaintiff's technology, the Court finds that the report is sufficiently tied to Plaintiff's technology. Any further dispute about the strength of this link speaks to the weight, not

5

admissibility, of the evidence. Therefore, the Court declines to strike Dr. Savage's report on these grounds.

### 2.    Survey Values

Defendants argue that the results of Dr. Savage's survey suffer from "focalism bias…so severe that it should be found inadmissible." Dkt. No. 99 at 9. Defendants define "focalism bias" as when a "conjoint survey . . . grossly overestimated the value of a given feature simply because it is included as one of the few features provided to respondents." *Id.* Defendants argue that Dr. Savage's survey's focus on network speeds unfairly highlights a "contrived feature," and not the actual features consumers consider when selecting a cellular plan. *Id.* Defendants point to several sections of Dr. Savage's report, which they argue are indicative of respondent confusion. *Id.* at 10 ("e.g., 'I didn't like how unclear some of the download speed / data allowance questions were (not informed enough about the numbers of it all)'"). Defendants argue that because Dr. Savage's survey data is insufficiently tied to the patented technology's incremental value within the accused products, and at least partially based on unrelated technology, such as home Wi-Fi, it is unreliable and must be excluded. *Id.* at 11-12. Finally, Defendants argue that because the data speeds Dr. Savage selects in his survey do not reflect the data speeds offered by the Defendant cell carriers, nor does his incremental value analysis reflect the carriers' real-world revenue in light of increased speeds, it is likewise unreliable and must be excluded. *Id.* at 11-13.

In its response, Plaintiff argues that any disputes over the inputs to Dr. Savage's survey speak to its weight, and not admissibility. Dkt. No. 136 at 11. Plaintiff argues that any respondent confusion speaks to the survey's weight, not admissibility. *Id.* at 12. Plaintiff adds that because this complaint "emanates from their own survey expert…such a dispute between experts should be resolved by the jury." *Id.* Plaintiff further criticizes these disputes as *post-hoc*, and points to

analogous caselaw prohibiting exclusion based on such *post-hoc* criticism. *Id.* Finally, Plaintiff points to several cases, which state that such survey results need not be perfectly analogous, so long as they are methodologically sound, and consistent with "industry norms." *Id.* at 12-14.

The Court is of the opinion that Defendants' objections to the inputs to Dr. Savage's report speak to the weight of his testimony, rather than admissibility. Under *Daubert* "[t]he focus ... must be solely on principles and methodology, not on the conclusions that they generate." *Daubert,* 509 U.S. at 595. Reliability under *Daubert* requires a Court to find "good grounds" for admission – not that the expert's inputs and methodology be perfect. Regardless of whether Dr. Savage's report "perfectly" values the patented technology, Defendants have failed to identify specific methodological flaws with his report. Instead, they conclude that because Dr. Savage's report does not perfectly match consumer behavior, it "fatally suffers" from "focalism bias" and must be excluded. Defendants' primary authority, *Townsend v. Monster Beverage Corp.*, involved a report based on an expert survey of consumer preferences for energy drinks. 303 F. Supp. 3d 1010, 1050 (C.D. Cal. 2018). *Townsend*, however found "fatal" the expert report's "focalism bias," because the proffering party offered *no* evidence to justify how their "attribute selection," supports its energy drink price premium opinions. *Id.* Unlike *Townsend*, Dr. Savage's report clearly seeks to quantify the value consumers place on a single benefit of the patented technology: increased network speeds. Since the Court found above that "increased network speeds" is sufficiently tied to the patented technology, the Court is of the opinion that Dr. Savage's "attribute selection" is sufficiently justified. Therefore, the Court finds that Dr. Savage's report does not fatally suffer from "focalism bias," and thus must not be stricken.

## IV.    CONCLUSION

Having considered the Motion, and for the reasons disused above, the Court finds that Defendants' Motion should be, and hereby is, **DENIED**.

    **SIGNED this 14th day of June, 2026.**

 

 

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE