**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| SMART RF INC., | § | |
| *Plaintiff*, | § | |
| | § | Case No. 2:24-cv-00195-JRG-RSP |
| v. | § | |
| | § | (Lead Case) |
| AT&T MOBILITY LLC, | § | |
| *Defendant*. | § | |

**MEMORANDUM ORDER**

Before the Court is Defendants' Motion to Exclude the Opinions and Testimony of Mr.
David Kennedy. **Dkt. No. 101**. In their Motion, Defendants contend that the opinions of Plaintiff's
damages expert, Mr. David Kennedy, are sufficiently unreliable and flawed to warrant exclusion
under Federal Rule of Evidence Rule 702 and *Daubert*. *Id.* at 1. Having considered the Motion,
and for the reasons discussed below, the Court finds that Defendants' Motion should be, and
hereby is, **DENIED**.

## I.    BACKGROUND

Plaintiff Smart RF Inc accuses Defendants AT&T Mobility LLC, Cellco Partnership d/b/a
Verizon Wireless, and T-Mobile USA, Inc. (collectively, "Defendants") of infringing U.S. Patent
Nos. 8,078,561, 8,767,857, 9,641,204 and 10,958,296 (collectively, the "asserted patents")
through the Defendants' use of cellular networking equipment manufactured by Intervenor-
Defendants Ericsson Inc. and Nokia of America Corporation. The asserted patents are generally
directed at cellular networking technology.

## II.    LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical,
or other specialized knowledge will help the trier of fact to understand the evidence or to determine

a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under

Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## III.    ANALYSIS

### A.    Income Approach

#### 1.    *Dr. Madisetti and Dr. Savage Data*

Defendants argue that because Mr. Kennedy's report relies on an application of Dr. Madisetti's "apportionment metrics," which Defendants also contend is flawed, it is likewise unreliable for the same reasons. Dkt. No. 101 at 6-7. Similarly, Defendants argue that the portions of Mr. Kennedy's report that rely on Dr. Savage's market data are flawed. *Id.* at 7. Defendants contend that Dr. Savage's data is flawed, because it is not tied to real-world market data. *Id.* at 7-8.

In its orders denying Defendants' Motions to strike Dr. Madisetti and Dr. Savage, the Court found this challenged data permissible. Therefore, the Court declines to strike the portions of Mr. Kennedy's report which rely on Dr. Madisetti's and Dr. Savage's data.

#### 2.    *Entire Market Value Rule*

Defendants next argue that the portion of Mr. Kennedy's report that relies on Dr. Savage's survey data is flawed, because it "overvalues the economic benefits of the '561 Patent." *Id.* at 8-9. Defendants contend that "Mr. Kennedy effectively assumes that the reduction in download speed

was the sole and exclusive driver of a customer leaving," rather than properly apportioning the patented technology's benefits. *Id.* at 9. Defendants conclude that this "improper" invocation of the Entire Market Value Rule (EMVR) renders Mr. Kennedy's report flawed, because it results in an alleged 10x damages inflation. *Id.*

In its reply, Plaintiff points to Federal Circuit caselaw, which permits apportionment though other means. Dkt. No. 139 at 7. First, Plaintiff argues that it apportions through economic analysis of non-infringing alternatives (NIAs) with a "substantially similar footprint." *Id.* at 6-7. Plaintiff argues that the *Georgia Pacific* Factors, which consider the "utility of the patent" over prior inventions can effectively apportion the patented invention's economic benefits, when the expert isolates the value of the patented feature. *Id.* at 7. Plaintiff further argues that Mr. Kennedy's factual analysis filters out non-accused "ecosystem" sales and any dispute as to this is a question of fact for the jury. *Id.* at 9-10.

The Court finds Mr. Kennedy's income approach analysis proper. In *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, relied on by Plaintiff, the Federal Circuit dismissed an attempt to distinguish apportionment analysis which relied on "the royalty *base* rather than the royalty rate." 879 F.3d 1332, 1348 (Fed. Cir. 2018). Instead, the Court found the "essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Id.* Since his analysis begins with non-infringing alternatives, Mr. Kennedy's analysis does just this. Furthermore, the Court finds sufficient Mr. Kennedy's *Georgia Pacific* analysis, which purports to filter out the benefit from features not claimed by the patent, without any invocation of the EMVR. While Mr. Kennedy's report does not apportion at the survey question level, the Court finds his NIA and *Georgia Pacific*

4

analysis sufficiently accounts for the non-patented features. Therefore, the Court declines to strike Mr. Kennedy's income approach analysis.

### B.    Cost Approach

#### 1.    *Network Densification*

Defendants next argue that Mr. Kennedy's cost approach analysis is methodologically flawed, because it rests on a faulty assumption that "network densification" would be necessary, but for the patented technology. Dkt. No. 101 at 9-10. Defendants add that this need for additional network infrastructure is expert *ipse dixit* and should be stricken, because it does not stem from Mr. Kennedy's expertise. *Id.* at 10 ("Mr. Kennedy has no expertise and is not qualified to opine as to Defendants' spectrum holdings, the unused capacity present in their networks, what amount of capacity remains available at any given time, or what buffer is present in the Defendants' networks").

In its reply, Plaintiff contends that since Mr. Kennedy's approach is "premised on the value of Defendants' non-infringing alternatives," and that "network densification is "a solution that is adopted in the real world," it is properly supported, and not *ipse dixit*. Dkt. No. 139 at 10. Plaintiff adds that Defendants' own internal documents, cited by both sides' experts, support this approach. *Id.*

The Court finds that Mr. Kennedy's "network densification" opinions are proper. In its reply, Plaintiff points to evidence that shows that "network densification" is a valid strategy to increase cellular network capacity. Any further dispute speaks to the weight of the expert testimony, not its underlying admissibility. Therefore, the Court declines to strike Mr. Kennedy's "network densification" opinions.

### 2. Radio Technology

Defendants argue that a single assumption leads to a "systematic overstatement" of Mr. Kennedy's royalty figures. Dkt. No. 101 at 11. Defendants point to Mr. Kennedy's assumption that "a non-infringing alternative to the accused products would be to replace all MIMO radios with two SISO radios." *Id.* Defendants argue that because Mr. Kennedy "lacks the requisite information to perform an accurate assessment of the incremental costs" of such a replacement, it improperly invites juror speculation and should be stricken. *Id.* at 12.

Plaintiff argues that at the *Daubert* stage, it is not the Court's job to evaluate the correctness of the data underlying an expert report. Dkt. No. 139 at 10. Instead, Plaintiff contends that Mr. Kennedy's "lowest observed cost" figure is "reasonable, conservative, and actually substantially underestimates the actual costs," in light of the limited available information. *Id.* at 11. Plaintiff points to caselaw where such analysis is permitted. *Id.*

The Court finds that Mr. Kennedy's radio price figure is sufficiently reliable under Rule 702 and *Daubert*. "Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). Defendants are free to challenge the accuracy of this figure in cross-examination; however, the Court finds that such fact checking is not within its "gatekeeping" role under *Daubert*. Therefore, the Court declines to strike Mr. Kennedy's radio price figures.

### C. Hypothetical Negotiation Date

Defendants argue that since Mr. Kennedy uses a hypothetical negotiation date years off from when the alleged infringement began for Verizon, and fails to account for Sprint, which later merged with T-Mobile, in his T-Mobile hypothetical negotiation analysis, it is improper and should be stricken. Dkt. No. 101 at 12-13. Defendants add that Plaintiff never sought leave to amend Mr.

6

Kennedy's report to correct the hypothetical negotiation date. *Id.* Defendants conclude that such error renders Mr. Kennedy's testimony "fatally flawed." *Id.*

In reply, Plaintiff argues that for Verizon, since Defendants disclosed the first sale one day before Mr. Kennedy's report was due, a belated amendment is proper. Dkt. No. 139 at 11. Plaintiff adds that such an amendment would only change the bargaining split margin by 0.03%, and adds that since AT&T is slated for trial first, such an amendment is not untimely. *Id.* at 12. For T-Mobile/Sprint, Plaintiff argues that since Sprint is a "wholly owned" subsidiary of T-Mobile, the Parties agreed to dismiss Sprint from the case, and because T-Mobile assumed Sprint's liabilities, T-Mobile is the appropriate negotiating party. *Id.* Plaintiff adds that regardless, a 2014 hypothetical negotiation would have considered the T-Mobile/Sprint merger. *Id.*

For both negotiation dates, the Court finds Mr. Kennedy's analysis proper. In *Cassidian Commc'ns, Inc. v. Microdata GIS, Inc.*, relied on by Defendants, the Court struck such testimony, because the defendant failed to justify why such testimony was methodologically sound. 2013 WL 11322510, at *2 (E.D. Tex. Dec. 3, 2013). By contrast, Plaintiff identifies numerous facts, including the small effect on the bargaining split for Verizon, T-Mobile's relationship with Sprint, and Sprint's dismissal from this case to justify Mr. Kennedy's report. Here, the Court finds this sufficient justification and finds that striking his hypothetical negotiation opinions is not appropriate. Therefore, the Court denies Defendants' Motion to Strike, and moots the request to supplement.

### D.    Running Royalty

Defendants contend that Mr. Kennedy's running royalty structure is not based on the facts of the case, and instead he "simply recited the law," on what a reasonable royalty should be,

without any application. Dkt. No. 101 at 14. Defendants conclude that without this missing link, exclusion is warranted. *Id.*

In its response, Plaintiff argues that explanation of the "economic circumstances surrounding the hypothetical negotiation" is sufficient under Federal Circuit precedent. Dkt. No. 139 at 14. Plaintiff points to Mr. Kennedy's *Georgia Pacific* analysis, and a piece of evidence, which they argue is sufficient evidence to support his running royalty analysis. *Id.* at 14-15.

The Court finds that Mr. Kennedy's hypothetical negotiation analysis is sufficiently tied to the facts of the case. In *Lucent Techs., Inc. v. Gateway, Inc.*, the Federal Circuit rejected expert testimony with "almost no testimony" to form their running royalty opinions, and instead required "some basis" for such opinions. 580 F.3d 1301, 1330 (Fed. Cir. 2009). Here, The Court finds sufficient Mr. Kennedy's Nokia license, and *Georgia Pacific* analysis, where he opines to the appropriateness of a running royalty. Therefore, the Court declines to strike Mr. Kennedy's running royalty analysis.

## IV.    CONCLUSION

Having considered the Motion, and for the reasons discussed above, the Court finds that Defendants' Motion should be, and hereby is, **DENIED**.

**SIGNED this 17th day of June, 2026.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE