**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SMART RF INC., | § | |
| *Plaintiffs*, | § | |
| | § | Case No. 2:24-cv-00195-JRG-RSP |
| v. | § | |
| | § | (Lead Case) |
| AT&T MOBILITY LLC, | § | |
| *Defendant*. | § | |
| | § | |

**MEMORANDUM ORDER**

Before the Court is Plaintiff's Motion to Exclude the Testimony of Lauren R. Kindler. **Dkt. No. 108**. In the Motion, Plaintiff contends that the opinions of Defendants' Damages Expert, Lauren R. Kindler, are sufficiently unreliable and flawed to warrant exclusion under Federal Rule of Evidence 702 and *Daubert*. *Id.* at 1. Having considered Plaintiff's Motion, and for the reasons discussed below, the Court finds that the Motion should be, and hereby is, **DENIED**.

## I.    BACKGROUND

Plaintiff Smart RF Inc accuses Defendants AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, and T-Mobile USA, Inc. (collectively, "Defendants") of infringing U.S. Patent Nos. 8,078,561, 8,767,857, 9,641,204 and 10,958,296 (collectively, the "asserted patents") through the Defendants' use of cellular networking equipment manufactured by Intervenor-Defendants Ericsson Inc. and Nokia of America Corporation. The asserted patents are generally directed at cellular networking technology.

## II.    LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

1

of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while

2

exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### III.    ANALYSIS

#### A.    Dali-Ericsson Agreement

Plaintiff argues that Ms. Kindler's reliance on a settlement between Dali Wireless and Ericsson to support her damages analysis is improper for several reasons. Dkt. No. 108 at 6. Plaintiff first argues that since Ms. Kindler's analysis fails to apportion for the actual patents asserted against Ericsson by Dali and instead uses the entire settlement amount to value the patents asserted by Smart RF, it is unreliable and should be excluded. *Id.* at 6-7. Plaintiff argues that this "dilutes any probative value" of the agreement, since it covers unrelated technology and partially includes a "covenant not to sue" rather than a license. *Id.* at 7. Finally, Plaintiff argues that Ms. Kindler's analysis fails to properly support her theory that the Dali-Ericsson agreement placed any value on the (technologically comparable) "DPD" related patents, nor does she demonstrate these were "key patents" to the Dali-Ericsson agreement. *Id.* at 8. Plaintiff adds that the irrelevance of this agreement is further illustrated by its underlying litigation, which did not involve "DPD" technology. *Id.* at 9.

In its response, Defendants argue that Plaintiff's Motion merely raises a "distinction without a difference" for its "covenant not to sue" and apportionment arguments. Dkt. No. 134 at 2-3. Defendants argue that Ms. Kindler permissibly "attributed the entire value of the license" to

3

the technically comparable patents. *Id.* Defendants argue that any dispute over Ms. Kindler's failure to "control for certain variables" is a fact dispute, properly left to the jury. *Id.* at 3. Defendants note that unlike Plaintiff's cited caselaw, which found improper agreements that lacked technical comparability, Ms. Kindler's opinions are proper, since she relies on "highly technical" opinions, including from Defendants' technical expert, to establish technical comparability. *Id.* at 4. Defendants further argue that since the value of "DPD" technology has increased over time, and since the Dali-Ericsson agreement includes non-comparable technology, Ms. Kindler at worst overvalues the patented technology. *Id.* at 6-7. Defendants conclude that this "conservative" approach is methodologically sound, and results in no prejudice to Plaintiff. *Id.* at 7-8.

The Court finds that Ms. Kindler's reliance on the Dali-Ericsson agreement is reasonable and does not warrant exclusion. In *Headwater Research LLC v. AT&T Inc. et al*, the Court relied on *Apple Inc. v. Wi-LAN Inc.,* and distinguished a failure to apportion with assignment of an entire license's value to a subset of technically comparable patents. No. 2:23-cv-397-JRG-RSP, Dkt. No. 284, 9 (E.D. Tex. Aug. 7, 2025) (*citing* 25 F.4th 960, 974-975 (Fed. Cir. 2022)). The Court declined to strike the testimony and found that there is "no more conservative way to apportion a portfolio license" than the latter approach. *Id.* at 10. The same holds true here. Ms. Kindler's report first relies on testimony from Defendants' technical experts to establish technological comparability. Then, Ms. Kindler assigns the entire Dali portfolio's value to the patented technology. Since any further disputes by Plaintiff involve Ms. Kindler's "conservative" apportionment methodology, the Court finds that Ms. Kindler's methodology is sound and should not be stricken.

B.       **Xilinx-Nokia Transactions**

*1.     Disclosure*

Plaintiff first argues that Ms. Kindler may not rely on the Xilinx-Nokia relationship, since she has not seen the written agreements and they were not produced to either side in this case. Dkt. No. 108 at 10. Plaintiff argues that Federal Circuit caselaw requires exclusion, and that this lack of disclosure leaves "substantial questions" remaining regarding the contents of the written agreements. *Id.* at 10-11.

In their response, Defendants argue that Ms. Kindler's report relied on sufficient facts and data about the commercial transactions between Xilinx and Nokia without the text of any particular agreement. Dkt. No. 134 at 7. Defendants contrast two cases where expert testimony that relied on undisclosed documents was stricken. *Id*. Defendants conclude that cross-examination, not exclusion is the proper means to challenge the propriety of these opinions. *Id.* at 8.

The Court finds that this lack of access to the written agreements is not fatal to Ms. Kindler's reliance on the Xilinx-Nokia transactions. The Court notes that the Plaintiff does not contend that relevant Xilinx-Nokia agreements were requested by Plaintiff in discovery nor that any Defendants or Intervenors had an obligation to produce them.   Furthermore, Plaintiff's two cited cases, *S3G Techn., Inc. v. Unikey Techns., Inc.* and *Siemens Medical Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, are inapposite, since the documents themselves were at issue but were protected from disclosure *at trial* by a protective order or national security laws, respectively. 637 F.3d 1269 (Fed. Cir. 2011); 2018 WL 4387660 (E.D. Tex. May 8, 2018). Here, Ms. Kindler is not relying on the contents of any documents that she is prohibited from testifying about at trial. She can be fully cross-examined on any perceived deficiencies in her knowledge of relevant facts, which goes to the credibility of her opinions.  Therefore, the Court finds that Ms.

Kindler's reliance on the Xilinx-Nokia transactions is not improper and does not warrant striking these portions of her report.

### 2.    Comparability

Plaintiff further argues that since the Xilinx-Nokia transactions involved patent purchasing, rather than licensing, they are not relevant and should be excluded under *Daubert*. Dkt. No. 108 at 12. Plaintiff notes that this transaction includes other intellectual property, and patents for non-"DPD" technology. *Id.* at 13. Plaintiff concludes that since Ms. Kindler fails to apportion for this "unrelated" technology, her testimony is unreliable. *Id.* at 13-14.

Defendants argue that Plaintiff's position is untenable, since it would limit a damages expert's comparable license analysis to "bare patent license[s]," and bar licenses with a mix of technologically comparable and non-comparable technology. Dkt. No. 134 at 9. Defendants argue that the correct standard – that the damages expert establish a baseline of technological comparability and adjust for any differences with the accused technology – is the correct standard that the Court should apply. *Id.* at 9-10. Defendants argue that since Ms. Kindler does not "adjust down" the royalty rate to account for the non-accused technology, her analysis remains proper and is merely a "conservative" approach with any errors in "Plaintiff's favor." *Id.* at 12.

The Court finds that the Xilinx-Nokia transactions are comparable in Ms. Kindler's analysis and should not be stricken. As discussed above, a damages expert may assign an entire portfolio's value to the patented technology, even if the portfolio contains non-comparable technology, so long as technological comparability is established with some portion of the portfolio. The same holds true for the the Xilinx-Nokia transaction, which includes non-patents, including "trade secrets, copyrights, or other technology." Since Ms. Kindler assigned the entire transaction's value to the patented technology and did not attempt to "adjust down" the value to

filter out the non-comparable technology, the Court finds this analysis proper. Therefore, the Court declines to strike the portions of Ms. Kindler's report which rely on the Xilinx-Nokia transactions.

## IV.    CONCLUSION

Having considered Plaintiff's Motion, and for the reasons discussed above, the Court finds that the Motion should be, and hereby is, **DENIED**.

**SIGNED this 30th day of June, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE