IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SMART RF INC., | § | |
| *Plaintiff*, | § | |
| | § | Case No. 2:24-cv-00195-JRG-RSP |
| v. | § | |
| | § | (Lead Case) |
| AT&T MOBILITY LLC, et al. | § | |
| *Defendant*. | § | |
| | § | |

**MEMORANDUM ORDER**

Before the Court is Plaintiff's Motion to Exclude the Testimony of Dr. David Ricketts. **Dkt. No. 105**. In the Motion, Plaintiff contends that the opinions of Defendants' Non-Infringing Alternatives Expert, Dr. Ricketts, are sufficiently unreliable and flawed to warrant exclusion under Federal Rule of Evidence 702 and *Daubert*. *Id.* at 1. Having considered Plaintiff's Motion, and for the reasons assigned below, the Motion is **DENIED,** except for the late-disclosed NIA's discussed below.

## I.    BACKGROUND

Plaintiff Smart RF Inc accuses Defendants AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, and T-Mobile USA, Inc. (collectively, "Defendants") of infringing U.S. Patent Nos. 8,078,561, 8,767,857, 9,641,204 and 10,958,296 (collectively, the "asserted patents") through the Defendants' use of cellular networking equipment manufactured by Intervenor-Defendants Ericsson Inc. and Nokia of America Corporation. The asserted patents are generally directed to cellular networking technology.

## II.    LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine

1

a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under

Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## III.    <u>ANALYSIS</u>

### A.    **Non-Infringing Alternatives**

Plaintiff contends that Dr. Ricketts' non-infringing alternative (NIA) analysis fails to "set forth the 'basis and reasons' for his opinions," because his report "fails to provide any analysis regarding the availability, feasibility, or acceptability of his proposals." Dkt. No. 105 at 3. Plaintiff argues that this analysis rests entirely and improperly on the expert's "*ipsie dixit* assertions" of availability. *Id.* at 4. For several NIAs to the '561 Patent, Plaintiff argues that Dr. Ricketts improperly assumes the NIA's regulatory compliance – an alleged prerequisite for acceptability – without the requisite factual support. *Id.* at 5. Plaintiff further argues that Dr. Ricketts' opinion that the accused products themselves are NIAs improperly assumes non-infringement and is unfairly prejudicial. *Id.* at 6. Finally, Plaintiff points to several NIAs to the '204 and '296 Patents, which it argues lack any factual support for their feasibility. *Id.* at 7.

Defendants argue that because of the relative "simplicity" of Dr. Ricketts' NIA opinions, his analysis is adequate. Dkt. No. 138 at 2. For example, Defendants note that since several NIAs "involve not implementing an extraneous claimed feature" or "involve taking a non-infringing feature and applying it to the Accused Products" a "complex analysis" is not required. *Id.* For the

latter, Defendants note that there were "already products using [the non-infringing] feature." *Id.* at 2-3. For the '561 Patent, Defendants point to several facts that indicate acceptability, and argue that Plaintiff's regulatory compliance argument lacks merit, in light of the existing commercial use of these proposed NIAs. *Id.* at 3-4. Finally, Defendants note that Dr. Ricketts did not argue that the accused products are themselves NIAs, but instead "reserved his opinion that the Accused Products do not infringe." *Id.* at 4-5.

The Court finds Dr. Ricketts' NIA analysis is acceptable. First, Plaintiff's "regulatory compliance" argument lacks merit. While regulatory compliance may prove dispositive to an NIA's availability, Plaintiff's motion fails to identify a "non-compliant" NIA, not already in commercial use, relied on by Dr. Ricketts. Furthermore, for the "simple" NIAs, where an infringing component was removed, or it simply added a non-infringing feature to the accused products, the Court finds Dr. Ricketts' analysis is reasonable, since each example is already in commercial use.

However, it was improper for Dr. Ricketts to identify additional NIAs in a rebuttal report, and Defendants have offered no persuasive explanation. Accordingly, any opinions that Dr. Ricketts has concerning NIAs first disclosed in his rebuttal report are hereby excluded. Dkt. No. 104 at 11. The Court otherwise declines to strike Dr. Ricketts' NIA opinions.

**B.    Hearsay**

Plaintiff argues that Dr. Ricketts' report serves as an improper vehicle for hearsay, because he merely parrots conversations with Defendants' and Intervenors' engineers, without providing any supporting analysis. Dkt. No. 105 at 7-8. For example, Dr. Ricketts relies on testimony from employee-engineers to support his position that they "would assume" regulatory compliance. *Id.* Plaintiff argues this recitation is impermissible, since it fails to provide any independent analysis.

4

*Id.* at 8. Plaintiff notes that this "regurgitation" continues in Dr. Ricketts' rebuttal report. Finally, Plaintiff argues that since some of this hearsay is contradicted by documents produced in discovery, it is unreliable. *Id.*

Defendants first note that FRE 703 permits an expert to rely on hearsay as "an input to their opinions." Dkt. No. 138 at 5. For each of Plaintiff's allegations, Defendants note that Dr. Ricketts' opinions were not "coextensive" with the hearsay and identify portions that encompass his own independent opinion. *Id.* at 6. Defendants also point to several portions of Dr. Ricketts' report where the hearsay corroborates his opinions. *Id.* at 7. Finally, Defendants argue that any inconsistencies between the hearsay and documents produced in discovery raise a fact dispute best left to cross-examination. *Id.* at 8-9.

The Court is persuaded that Dr. Ricketts' report is not merely a vehicle for unsubstantiated hearsay, but instead properly adds his expert "imprint" to it. FRE 703 permits an expert to rely on hearsay, so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." While experts may not parrot hearsay, hearsay may form inputs to their opinion. *See Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1375 (Fed. Cir. 2021). Plaintiff's brief merely lists the numerous paragraphs that rely on this hearsay, and argues that for a representative example, his opinions mirror the hearsay. The Court finds this unpersuasive. In their response, Defendants separate the hearsay and expert opinion from this representative example. The report properly lists the materials considered and the basis for any opinions. If Plaintiff objects to hearsay in Dr. Ricketts' actual testimony that it contends would fail the balancing test in Rule 703, it may urge that objection contemporaneously.

### C.    Untimely Discovery

Plaintiff argues that portions of Dr. Ricketts' rebuttal report rely on untimely discovery, including interrogatory responses served after the initial expert report due dates. Dkt. No. 105 at 10-11. Plaintiff notes that "Without the untimely response, Dr. Ricketts would have had no basis for including this section of his Rebuttal Report." *Id.* at 12. Plaintiff argues that all four *Barrett v. Atlantic Richfield Co.* factors favor exclusion. *Id.* at 12-13 (*citing* 95 F.3d 375, 380 (5th Cir. 1996)).

Defendants argue that for the alleged untimely interrogatory responses, Dr. Ricketts's report relates back to earlier, timely interrogatory responses. Dkt. No. 9-10. For Common Interrogatory No. 2, Defendants note that Dr. Ricketts's reliance on a late supplement only updated the "classification" of four radios, and results in no prejudice to Plaintiff. *Id.* at 10-11. Finally, Defendants argue that Plaintiff's argument – that Dr. Ricketts improperly relies on undisclosed documents – lacks merit, since the documents are publicly available. *Id.* at 11. Defendants analogize this use to public textbooks routinely used by experts. *Id.* The Court finds that Dr. Ricketts' report is properly supported. The documents that Plaintiff complains of were not generated by Defendants and were thus not untimely disclosed.

### D.    Commercial Embodiments

Plaintiff argues that Dr. Ricketts' report applies the incorrect legal standard, when he opines that "certain Accused Products are noninfringing with respect to system claims because those products do not 'use' certain accused features and functionalities." Dkt. No. 105 at 13. Plaintiff argues that the correct standard is whether the accused product is "capable" of infringement. *Id.* Plaintiff concludes that exclusion is warranted, since Dr. Ricketts' application of this standard will lead to juror confusion. *Id.* at 15.

Defendants respond that Plaintiff's commercial embodiment argument ignores a key distinction between whether an accused product is "configured to" or merely "capable of" infringing. Dkt. No. 138 at 12. Defendants point to Federal Circuit caselaw, which requires that "when a claim recites 'configured to,' one must look to the final configuration of the commercial embodiment in use—mere capability is insufficient." *Id.* Defendants argue that since all asserted claims require "products configured a certain way," Dr. Ricketts' opinions are proper. *Id.* at 14.

The Court finds Dr. Ricketts' commercial embodiments testimony acceptable. In *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, relied on by Defendants, the Federal Circuit found that "adapted to" carried a narrower meaning than "capable of." 672 F.3d 1335, 1349 (Fed. Cir. 2012). While the Federal Circuit does not provide clear guidance over whether "adapted to" refers to an embodiment's "final configuration," it clearly does not preclude such an interpretation. Therefore, the Court finds that Dr. Ricketts' commercial embodiments testimony is not legally impermissible and should not be excluded.

## IV.    CONCLUSION

Having considered Plaintiff's Motion, and for the reasons assigned, the Court finds that the Motion should be **DENIED,** except as to the late-disclosed NIA's discussed above.

**SIGNED this 2nd day of July, 2026.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE