**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SMART RF INC., | § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 2:24-cv-00195-JRG-RSP |
| AT&T MOBILITY LLC, | § § | (Lead Case) |
| *Defendant*. | § § | |

**MEMORANDUM ORDER**

Before the Court is Plaintiff's Motion to Strike Portions of the Expert Reports and to Exclude Testimony of James Proctor. **Dkt. No. 104**. In their Motion, Plaintiffs contend that the opinions of Defendants' invalidity expert, Mr. James Proctor, are sufficiently unreliable and flawed to warrant exclusion under Federal Rule of Evidence 702 and *Daubert*. *Id.* at 1. Having considered the Motion, and for the reasons discussed below, the Court finds that Plaintiff's Motion should be, and hereby is, **GRANTED** as to ¶¶ 38, 81-90, 104-111, 117, 118, 122-124, 140-141 of Mr. Proctor's report for improperly disclosed NIAs; **GRANTED** as to ¶¶ 981-982, 991, 1188-1189, 1196-1198 of Mr. Proctor's report and  ¶¶ 29-32 of Mr. Proctor's rebuttal report for improperly disclosed anticipation theories; the Motion is otherwise **DENIED**.

I.      **BACKGROUND**

Plaintiff Smart RF Inc accuses Defendants AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, and T-Mobile USA, Inc. (collectively, "Defendants") of infringing U.S. Patent Nos. 8,078,561, 8,767,857, 9,641,204 and 10,958,296 (collectively, the "asserted patents") through the Defendants' use of cellular networking equipment manufactured by Intervenor-Defendants Ericsson Inc. and Nokia of America Corporation. The asserted patents are generally directed at cellular networking technology.

1

## II.    LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law)

("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## III.    ANALYSIS

### A.    Claim Construction

Plaintiff argues that Mr. Proctor's report fails to apply the Court's preliminary constructions, by basing his analysis on how "Smart RF apparently reads and applies" each term. Dkt. No. 104 at 3. More specifically, for Claims 1, 8 and 11 of the '857 Patent, Mr. Proctor opines that they lack written description support "to the extent Smart RF's argument regarding Defendant's construction and the patent specification's failure to define the term 'nonlinear crosstalk' are accepted." *Id.* (*citing* 204-2 at ℙ 725). Plaintiff further argues that Mr. Proctor's report improperly raises indefiniteness arguments properly reserved for claim construction and ultimately risks juror confusion. *Id.* at 3-4. For the '204 and '296 patents, Plaintiff argues that Mr. Proctor improperly "interjects limitations," not required by the Court's preliminary constructions. *Id.* at 4-5. Finally, while Plaintiff acknowledges that Mr. Proctor's report was produced prior to the Court's issuance of the Claim Construction Order, since "[Mr. Proctor stated] that his opinion

3

would not change if the Court adopts Defendants' proposed construction," Plaintiff argues that Mr. Proctor's failure to consider even the Court's preliminary constructions renders his opinions unreliable.

In their opposition, Defendants first argue that Mr. Proctor's report considers the Court's preliminary constructions. Dkt. No. 137 at 3-4. Defendants point to a section of Mr. Proctor's report, which defines the term "nonlinear crosstalk," and notes that Mr. Proctor specifically addressed the lack of claim construction order from the Court. *Id.* For the '561 and '857 Patents, Defendants argue that since Mr. Proctor's alleged indefiniteness opinions are also relevant to written description and enablement, they remain proper. *Id.* at 4-5. For the '204 and '296 Patents, Defendants point to language from Mr. Proctor's report, which directly contradicts Plaintiff's assertion – that Mr. Proctor improperly added an "algorithm" limitation. *Id.* at 5

The Court finds that Mr. Proctor's report does not perform improper or untimely claim construction. In light of the lack of Markman order, the Court finds that Mr. Proctor's consideration of both claim construction positions was not objectionable. Furthermore, given that claims must be construed the same for both validity and infringement, the Court finds that Mr. Proctor's written discussion – in light of SmartRF's infringement read – also unobjectionable. Finally, The Court finds Plaintiff's "algorithm" argument lacks merit. The parties agree that the '204 and '296 Patents do not recite an algorithm. Mr. Proctor opines that because the specifications do not disclose any specific algorithms, the patents lack written description support, whereas Plaintiff argues that no specific algorithm need be disclosed. The Court finds that this dispute, however, speaks to the weight of Mr. Proctor's testimony, not admissibility. Therefore, the Court declines to exclude any alleged improper claim construction opinions by Mr. Proctor.  However, Defendants must bear in

mind that, now that the Claim Construction Order has issued, Mr. Proctor's testimony must only apply the Court's constructions.

### B.      Undue Experimentation

Plaintiff argues that for the '561 Patent, since Mr. Proctor's report fails to analyze the *Wands* Factors, his undue experimentation opinions are unreliable and should be excluded. Dkt. No. 104 at 5-6. Plaintiff contrasts Mr. Proctor's (lack of) analysis for the '561 Patent with the '204 and '296 patents. *Id*. Plaintiff concludes that such conclusory opinions are "unhelpful," and should be excluded. *Id.* at 6.

In their response, Defendants point to sections of Mr. Proctor's report, which they argue analyze the *Wands* Factors, albeit without naming them. Dkt. No. 137 at 5. Defendants note that Mr. Proctor introduces the *Wands* Factors in his legal standards section. *Id.*

The Court finds Mr. Proctor's undue experimentation analysis to be acceptable. A court need not consider every one of the *Wands* factors in its analysis. Rather, a court is only required to consider those factors relevant to the facts of the case. *See Amgen, Inc. v. Chugai Pharm. Co., Ltd.,* 927 F.2d 1200, 1213 (Fed.Cir.1991). While Mr. Proctor's report only appears to partially analyze the *Wands* factors, Plaintiff fails to indicate why such analysis fails to reach the ultimate question of undue experimentation. Therefore, the Court declines to exclude Mr. Proctor's undue experimentation analysis.

### C.      Hearsay

Plaintiff argues that Mr. Proctor's reliance on hearsay statements is improper, because he merely "parrots" Defendants' engineers, without providing any specific expert analysis. Dkt. No. 104 at 6-7. Plaintiff concludes that Mr. Proctor's opinions merely "regurgitate facts" and fail to "offer any opinions based on his 'scientific, technical, or other specialized knowledge.'" *Id.* at 7.

Defendants' opposition first notes that Plaintiff does not dispute that experts may rely on hearsay to form their opinions. Dkt. No. 137 at 6. Defendants further argue that Mr. Proctor's opinions provide specific analysis, because, for example, he corroborated these conversations with reference works. *Id.* Defendants contrast Plaintiff's authority as inapplicable, because there, the expert's hearsay was "coextensive" with his ultimate opinions. *Id.* at 7. Defendants conclude that since Mr. Proctor provides additional analysis, his reliance on conversations with company engineers is proper. *Id.*

The Court finds that the portions of Mr. Proctor's report which rely on statements from Defendants' engineers are acceptable. An "expert must form his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials [and may not] simply parrot impermissible hearsay." *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) (cleaned up). Here, Mr. Proctor does more than parrot employee testimony from Defendants. Instead, he provides analysis, using his own expertise, and from industry textbooks. Therefore, the Court declines to exclude these portions of Mr. Proctor's report. That does not mean, however, that Mr. Proctor may simply repeat the hearsay statements to the jury. What he has learned from the employees may enter his opinions, but to get the employee statements before the jury, Defendants will have to call them to testify.

### D.    Invalidity Theories

Plaintiff contends that Mr. Proctor's report introduces new, untimely, invalidity theories, and violates Local Patent Rule 3-3. Dkt. No. 104 at 8. For the '204 and '296 Patents, Plaintiff contends that Defendants failed to properly disclose the written description and enablement theories laid out in Mr. Proctor's report. *Id.* For claims 1, 3, 6, and 11 of the '561 Patent, Plaintiff contends that Mr. Proctor's rebuttal report reveals previously undisclosed prior art, contrary to

Local Patent Rule 3-3. *Id.* at 9-10. Plaintiff adds that this additional prior art extends beyond the scope of a proper rebuttal report under Rule 26 and should be excluded. *Id.* at 10.

Defendants argue that Plaintiff's invalidity theory arguments "mischaracterize the opinions and ignore the context in which they were provided." Dkt. No. 137 at 7. For the '204 and '296 Patents, Defendants argue that Mr. Proctor's arguments were provided in anticipation of Plaintiff's expert, Dr. Madisetti, confirming Plaintiff's infringement theories. *Id.* at 8. For the allegedly undisclosed prior art underlying Mr. Proctor's '561 Patent analysis, Defendants likewise argue this was offered in his rebuttal to Dr. Madisetti's report.

The Court first finds that Mr. Proctor's written description and enablement opinions for the '204 and '296 Patents were untimely disclosed, in violation of the Local Patent Rule 3-3(d). Local Patent Rule 3-3(d) requires disclosure all written description and enablement invalidity theories "[n]ot later than 35 days after the Initial Case Management Conference." While the rule permits subsequent amendments, Defendants never sought leave to amend their Rule 3-3 disclosures to encompass these theories. Therefore, the Court **STRIKES** ¶¶ 981-982, 991, 1188-1189, 1196-1198 of Mr. Proctor's report, which discuss written description and enablement opinions that were not timely disclosed.

The Court, likewise, finds improper Mr. Proctor's anticipation opinions for the '561 Patent. Local Patent Rules 3-3(a-b) require identification of each item of anticipating prior art "Not later than 35 days after the Initial Case Management Conference." *Augmented Hammerstein Predistorter*, ("AHP"), relied on in Mr. Proctor's rebuttal report, was not disclosed in Defendants' Rule 3-3 disclosures, nor did Defendants seek to amend these disclosures. Defendants argue that AHP was relied on in Plaintiff's expert report for establishing reduction to practice, and that arguing anticipation on rebuttal is proper. However, the Court disagrees. While Mr. Proctor may

use AHP to rebut Plaintiff's reduction to practice opinions, Defendants may not "affirmatively" rely on AHP for new, undisclosed, anticipation opinions. Therefore, the Court **STRIKES ¶¶ 29-32** of Mr. Proctor's rebuttal report, which discusses AHP's anticipation of the '561 Patent.

### E.    Non-Infringing Alternatives

Plaintiff argues that Mr. Proctor's report "introduces new, previously undisclosed" non-infringing alternatives (NIAs) and NIA theories. Dkt. No. 104 at 10. Plaintiff notes that these NIAs were not disclosed in response to relevant interrogatories and argues that under the *Barrett v. Atlantic Richfield Co.* factors, exclusion is warranted, because these previously undisclosed NIAs greatly prejudice them. *Id.* at 11 (citing 95 F.3d 375, 380 (5th Cir. 1996)). Plaintiff argues that these NIAs are not proper rebuttal theories, since they are outside the "four corners" of Dr. Madisetti's report. Dkt. No. 104 at 12. Finally, Plaintiff argues that Mr. Proctor's NIA analysis is unreliable, since he fails to undertake proper analysis. *Id.* at 12.

Defendants argue that Mr. Proctor's NIAs are solely in response to "previously undisclosed and unforeseen testing opinions introduced by [Plaintiff] in Dr. Madisetti's and Dr. Helaoui's opening reports." Dkt. No. 137 at 9. Defendants point to several theories first disclosed in Plaintiff's expert reports, which they argue they were unable to forecast. *Id.* at 10-11.

The Court finds that Mr. Proctor's report improperly introduces previously undisclosed NIAs. Mr. Proctor's report rebuts reports of testing by Mr. Helaoui and Dr. Madisetti, where they measured the benefit of the patented invention through comparison to a modified version with the patented features removed. *See e.g.,* Dkt. No. 104-3 at ¶ 82 (finding that an alternative proposed in Mr. Helaoui and Madisetti's testing "cannot serve as the DPD model alleged to measure benefit attributable to the '345 Patent"). Mr. Proctor's rebuttal likewise considers alternatives to the patented invention, to argue that the alternatives in Mr. Helaoui and Madisetti's report overstate

8

the patented invention's benefit. This necessarily requires consideration of NIAs. At the rebuttal expert stage, these NIAs are untimely. Furthermore, neither case relied on by Defendants is applicable. In *Netlist, Inc. v. Micron Tech*, Inc and *Mojo Mobility, Inc. v. Samsung Elecs. Co., Ltd*, the Court permitted new NIAs to rebut a damages expert who valued the asserted patents against alternative technology. 2024 WL 326591, at *3 (E.D. Tex. Jan. 27, 2024; 2024 WL 3527240, at *8 (E.D. Tex. July 24, 2024). In *Netlist*, the Court found requisite notice to the allegedly improperly disclosed NIAs through a prior interrogatory response. 2024 WL 326591 at *4. Here, Defendants identify no interrogatory response which disclosed these alleged NIAs, despite Plaintiff's request. *See* Dkt. No. 4 at 11 ("despite Smart RF serving an interrogatory specifically requesting 'all facts related to any alleged non-infringing alternatives/substitutes and/or allegedly acceptable noninfringing alternatives/substitutes available [] during the relevant timeframe,' these newly proposed alternatives were never disclosed by Defendants during fact discovery"). In *Mojo Mobility*, the Court found proper expert testimony on "wireless charging" that sought to rebut expert testimony focused on wired charging, but "analyzed the pricing and profits associated with [Defendant's] wired versus wireless chargers." 2024 WL 3527240, at *8; *Mojo Mobility, Inc. v. Samsung Elecs. Co., Ltd*, Case No. 2:22-cv-00398-JRG-RSP, Dkt. No. Dkt. 96-1 ¶ 240 (Bergman Report). Unlike *Mojo Mobility*, there are no portions of Mr. Helaoui and Madisetti's reports which map to these alleged NIAs. Therefore, the Court **STRIKES** ¶¶ 38, 81-90, 104-111, 117, 118, 122-124, 140-141 of Mr. Proctor's report which introduce new, previously undisclosed theories.[1]

---

[1] The Court notes that this does not preclude Mr. Proctor from directly rebutting the "four corners" of Mr. Helaoui and Madisetti's reports, including on their testing. Mr. Proctor is merely prohibited to testifying to the NIAs first disclosed in his report.

### F.    Infringement Theories

In its Motion, Plaintiff contends that Mr. Proctor's invalidity report improperly bases his opinions on their infringement theories. Dkt. No. 104 at 13. Plaintiff concludes that Mr. Proctor's opinions are improper because his analysis fails to independently determine the "meaning and scope" of the asserted claims. *Id.* at 14-15.

The Court finds that Mr. Proctor's invalidity opinions are based on the scope of the claims as understood by a person of ordinary skill and consistent with the Court's claim constructions. The fact that he also refers to his understanding of Plaintiff's infringement theories does not render the opinions improper. Therefore, the Court declines to exclude any of Mr. Proctor's opinions based on Plaintiff's infringement theories.  If his testimony does not make this clear, a contemporaneous objection may be made.

## IV.    <u>CONCLUSION</u>

Having considered the Motion, and for the reasons discussed above, the Court finds that Plaintiff's Motion should be, and hereby is, **GRANTED** as to ¶¶ 38, 81-90, 104-111, 117, 118, 122-124, 140-141 of Mr. Proctor's report for improperly disclosed NIA theories; **GRANTED** as to ¶¶ 981-982, 991, 1188-1189, 1196-1198 of Mr. Proctor's report and  ¶¶ 29-32 of Mr. Proctor's rebuttal report for improperly disclosed anticipation theories; the Motion is otherwise **DENIED**.

SIGNED this 3rd day of July, 2026.

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE