**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| SMART RF INC., | § | |
| *Plaintiff*, | §<br>§ | |
| v. | §<br>§ | Case No. 2:24-cv-00195-JRG-RSP |
| | § | (Lead Case) |
| AT&T MOBILITY LLC, | §<br>§ | |
| *Defendant*. | §<br>§ | |

**MEMORANDUM ORDER**

Before the Court are Defendants' Motions to Strike and Exclude Testimony of Dr. Mohamed Helaoui (**Dkt. No. 118**) and Dr. Vijay Madisetti (**Dkt. No. 119)**. In the Motions, Defendants argue that testing by Dr. Helaoui and Dr. Madisetti contains improperly disclosed infringement theories, was performed with undisclosed testing apparatus, and was not performed against the accused products or claimed invention. Having considered the Motions, and for the reasons discussed below, the Court **DENIES** both motions.

## I.    BACKGROUND

In the above-captioned action, Plaintiff Smart RF Inc accuses Defendants AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, and T-Mobile USA, Inc. (together, "Defendants") of infringement of infringing U.S. Patent Nos. 8,078,561 ("'561 Patent"), 8,767,857 ("'857 Patent"), 9,641,204 ("'204 Patent") and 10,958,296 ("'296 Patent") (the "asserted patents") through their use of cellular networking equipment manufactured by Intervenor-Defendants Ericsson Inc. and Nokia of America Corporation. The asserted patents are generally directed at cellular networking technology.

1

## II.    LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law)

("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

III.    **ANALYSIS**

A.    **Helaoui Testimony**

1.    *Reliability*

Defendants seek to strike portions of Dr. Helaoui's report under Federal Rule of Evidence 702, because Dr. Helaoui's report is merely "loosely" or "roughly" based on the asserted claims. Dkt. No 118 at 4-5. Defendants argue that since the joint testing did not use the patented features, it is thus unreliable. *Id.* at 5. Defendants further argue that since the testing was not compared to the accused features, it is likewise unreliable.

In response, Plaintiff argues that Defendants' contention – that the testing must be limited to the accused products or patented invention – lacks authority. Dkt. No. 147 at 5. Plaintiff further argues that regardless, the joint testing is properly tied to both the accused products and asserted claims. *Id.* at 6. Plaintiff points to portions of the report, which note that these testing approaches "included solutions disclosed in and covered by [the Asserted Patents]," and "systems…present in

the accused products." *Id.* Plaintiff points to Dr. Helaoui's deposition testimony, where he testifies that his model is based on the specifications and claims of the asserted patents. *Id.* Plaintiff argues that for each of the Asserted Patents, Defendants' argument – that the joint testing is not tied to the asserted claims – raises a fact dispute over claim interpretation, inappropriate for *Daubert*. *Id.* at 7-9. Plaintiff further argues that Defendants' cited caselaw is factually inapplicable, because the expert comparison in those cases dealt with entirely separate technology, rather than the non-infringing alternatives at issue here. *Id.* at 9.

The Court finds that the joint testing is not improper and should not be stricken. In the Motion, Defendants contend that the joint testing is not properly tied to the asserted patents. The Court, however, finds that there is no requirement that the testing fully replicate either the accused products or the full claim scope.  It is enough that the testing provide information that the experts can use to support their opinions on the benefits of the invention. The reports of the experts provides sufficient evidence to meet this standard. Therefore, the Court declines to strike Dr. Helaoui's testimony regarding his joint testing with Dr. Madisetti on reliability grounds.

### 2. *Disclosure*

Defendants further argue that Plaintiff did not properly disclose its underlying data and test equipment during fact discovery. Dkt. No. 118 at 1. Defendants conclude that this lack of proper disclosure precludes introduction of the testing. *Id.*

In its response, Plaintiff argues that because expert-related testing data is properly disclosed in expert discovery, Plaintiff did not fail to disclose any underlying data and test equipment during fact discovery pursuant to either Rule 26 or 37. Dkt. No. 147 at 10. Plaintiff contends that under Rule 26, the test results were properly disclosed in Dr. Helaoui's report. *Id.* at 10-11. Plaintiff

further contends that Defendants cannot argue prejudice regarding the testing apparatus, since they were afforded sufficient opportunity to inspect and rebut.[1] *Id.*

Plaintiff offers Dr. Helaoui, the inventor of several of the asserted patents, as a "hybrid" witness pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Dkt. No. 118 at 1. This rule requires the sponsoring party to serve a summary disclosure, which provides notice to the opposing party of the scope of the testimony. Dr. Helaoui, however, served a full report regarding his joint testing with Dr. Madisetti. Since expert testimony is limited to the "four corners" of the report, no prejudice exists for Dr. Helaoui to likewise testify within the scope of his served report. Therefore, the Court declines to strike Dr. Helaoui's joint testing opinions on timeliness grounds.[2]

### B.     Apportionment and Benefit Opinions

#### 1.       '345 and '561 Patents

In the Motion, Defendants argue that Dr. Madisetti's apportionment opinions are unreliable, because the opinions rely on a "baseless" link between the network throughput improvements attributable to the '345 and '561 Patents, and network speed improvements between cellular generations (i.e., 3G to 4G). Dkt. No. 119 at 7-8. Defendants argue that because this link "lacks justification" and is "not tied to the facts of the case," Dr. Madisetti's apportionment opinions for the '345 and '561 Patents should be excluded. *Id.* at 9. Defendants further argue that this speed improvement can be attributed to increases in network coverage, or to 5G networks. *Id.*

In response, Plaintiff points to portions of Dr. Madisetti's report which explain how low network throughput caused lower 3G network speeds. Dkt. No. 146 at 7. Plaintiff argues that Dr. Madisetti's "link" is proper because the improved throughput in later generation networks

---

[1] The testing was apparently completed by June 26 and disclosed on July 8. The Court finds that any such delay was not prejudicial.

[2] As discussed *infra*, the Court finds that the joint testing apparatus was not improperly disclosed.

contributes to their faster speeds. *Id.* at 8. Plaintiff further argues that Defendants'' "coverage" argument is incorrect, because Dr. Madisetti identifies portions of the '345 and '561 Patents that contribute to network coverage. *Id.* at 8-9.

The Court finds that Defendants' objections to Dr. Madisetti's apportionment opinions for the '345 and '561 Patents do not support exclusion. Dr. Madisetti's report opines that the claimed invention increases network throughput, through "higher power operation of wideband OFDM with high PAPR and complex modulation." While Defendants characterize Dr. Madisetti's opinions as "*ipse dixit*" speculation, Defendants ignore his identified link between the patented invention and increase in network speed and the coverage provided by later generation networks. Any further dispute goes to the weight of Dr. Madisetti's opinions, rather than their admissibility. Since the Court did not exclude Dr. Madisetti's apportionment opinions, based on Dr. Helaoui's testing, the Court likewise rejects Defendants' testing argument.

### 1. '857, '204 and '296 Patents

Defendants argue that because Dr. Madisetti's apportionment opinions for the '857, '204 and '296 Patents rely on a misunderstanding of "MIMO gNodeB radio units," his conclusions are unreliable and warrant exclusion. Dkt. No. 119 at 10.

Plaintiff's responds that Defendants' argument relies on a misunderstanding of MIMO radio units, insofar as Defendants "improperly recast MIMO radios as SISO." Dkt. No. 146 at 9. Plaintiff argues that this goes to the weight, rather than admissibility, of the testimony. *Id.*

The Court finds that Defendants' objections to Dr. Madisetti's apportionment opinions for the '857, '204 and '296 Patents do not address his methodology and instead attack the correctness of his inputs. Defendants' Motion provides no indication why and how these MIMO radios are

structured as SISO. Such attorney argument is insufficient. Therefore, the Court **DENIES** Defendants' Motion as to Dr. Madisetti's apportionment opinions.

### C.    Testing

Defendants argue that Dr. Madisetti's opinions based on the joint testing with Dr. Helaoui, the named inventor, should be stricken under Rule 37, because the reports introduce new pieces of factual evidence after the close of fact discovery. Dkt. No. 119 at 11. Defendants add that regardless of whether Dr. Madisetti's report reflects expert opinions, because his test equipment reflects its underlying factual predicate, it should be disclosed in fact discovery. Defendants further argue that Dr. Helaoui's testing report should be stricken, as not properly disclosed pursuant to Rule 26(a)(2)(C), the "hybrid witness" rule.

Plaintiff argues that because this equipment is part of Dr. Madisetti's and Dr. Helaoui's testing to help prepare their expert report, it is not subject to fact discovery and was properly disclosed in Dr. Madisetti's expert report. Dkt. No. 146 at 5. Plaintiff argues that Defendants' caselaw is factually inapposite, because both cases concerned third party evidence, rather than evidence generated by the experts themselves. *Id.*

The Court finds that Dr. Madisetti's opinions based on his joint testing with Dr. Helaoui should not be stricken, because it was timely disclosed in expert discovery, and not subject to fact discovery. Defendants' primary authority, *VARTA Microbattery GmbH v. Audio P'ship LLC*, specifically contrasted "a situation where the expert was the origin of the information which was not previously disclosed" with the late-disclosed third party documents found to render inadmissible the challenged expert report. 2023 WL 5434853, at *3 (E.D. Tex. Aug. 23, 2023).[3] Since the expert was the source of both the testing equipment and data, *VARTA* does not support

---

[3] *Zurich Am. Ins. Co. v. Hardin*, also relied on by Defendants, pertains to third-party documents. 2020 WL 1150981 (M.D. Fla. Mar. 10, 2020).

disclosure of this data in fact discovery. Defendants do not dispute that this data was fully disclosed in expert discovery. Therefore, the Court finds no basis under Rule 37 to strike Dr. Madisetti's opinions based on the joint testing with Dr. Helaoui.

### D.    Patent Rule 3-1 Infringement Contentions

Finally, Defendants argue that Dr. Madisetti's report contains over 1,400 new pages of improperly disclosed infringement theories disguised as expert opinion. Dkt. No. 119 at 12. Defendants note that Dr. Madisetti's report offers opinions based on "new components in Ericsson and Nokia Accused Products." *Id.* Defendants attach a list of allegedly undisclosed infringement theories. *Id.*; *See also* Dkt. Nos. 119-3, 119-4.

Plaintiff argues that Dr. Madisetti merely fills in specifics traceable to the original infringement contentions and theories. Dkt. No. 146 at 10. Plaintiff notes that the rules required it to disclose "every possible manifestation of the alleged infringement," but permit experts to provide additional factual support to existing contentions. *Id.* (citing *Orion IP, LLC v. Staples Inc.*, 407 F.Supp.2d 815, 817 (E.D. Tex. 2006)). Plaintiff maps Dr. Madisetti's allegedly "undisclosed" features to its original infringement contentions, under its interpretation of the asserted patents and accused products. Dkt. No. 146 at 11-14. For Dr. Helaoui, the Court finds that it was properly disclosed, pursuant to *expert* discovery rules.

Defendants' Motion merely argues that the newly identified *features* in Dr. Madisetti's report are somehow newly disclosed *theories*. Courts routinely reject this approach. *See Oracle Am., Inc. v. Google Inc.*, 2011 WL 4479305, at *3 (N.D. Cal. Sept. 26, 2011) ("That a particular document or source code file was not cited in a party's infringement disclosures does not automatically preclude the party from using that document or file to support a theory that was timely disclosed"). The Court finds that Dr. Madisetti's report does not add new, undisclosed

infringement theories. Therefore, the Court **DENIES** Defendants' Motion as to any "undisclosed infringement theories."

## IV.     CONCLUSION

Having considered the Motions, and for the reasons discussed above, the Court **DENIES** Defendants' Motion to Strike and Exclude Testimony of Dr. Mohamed Helaoui (Dkt. No. 118) and **DENIES** Defendants' Motion to Strike and Exclude Testimony of Dr. Vijay Madisetti (Dkt. No. 119).

**SIGNED this 3rd day of July, 2026.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE